## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**DARRYLENA G.,**

          **Plaintiff,**               **Case No. 1:20-cv-19984**
                                   **Magistrate Judge Norah McCann King**

    **v.**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

          **Defendant.**


### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Darrylena G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

## I.    PROCEDURAL HISTORY

On November 14, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since October 1, 2017. R. 82, 98, 165−82. The application was denied initially and upon reconsideration. R. 101−06, 109−11. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

administrative law judge. R. 112–15. Administrative Law Judge ("ALJ") Nancy Lisewski held a hearing on February 11, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 39–64. In a decision dated April 8, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2017, her alleged disability onset date, through the date of that decision. R. 16–33. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on October 29, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 21, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[2] On the same day, the case was reassigned to the undersigned. ECF No. 9. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc.*

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 42 years old on her alleged disability onset date. R. 32. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022. R. 19. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity between October 1, 2017, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post labral repair of the left shoulder, lumbar degenerative disc disease, chronic intractable lower back pain and neck pain, and cervical spondylosis. *Id*. The ALJ also found that Plaintiff's diagnosed obesity, hypertension, breast reduction, and depression and/or reactive depression were not severe. R. 19–22.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22–23.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 23–32. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a cashier and stock clerk, grocery management trainee, and cosmetic and toiletries salesperson. R. 32.

At step five, the ALJ found that a significant number of jobs—*i.e*., approximately 11,000 jobs as a school bus monitor; and approximately 6,000 jobs as an usher—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 33. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the

Social Security Act from October 1, 2017, her alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 16.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.   James H. Rushmore, P.T.

On October 12, 2017, physical therapist James H. Rushmore, P.T., administered a physical work capacity screening and provided work capability / tolerance recommendations. R. 469−75[3] (copy of seven-page functional task assessment and recommendations dated October 12, 2017), 1337−43 (duplicate), 1345−51 (duplicate), 1336 (copy of one-page functional task summary and recommendations dated October 12, 2017). Mr. Rushmore began by explaining Plaintiff's assessment as follows: "The PHYSICAL THERAPY - PHYSICAL WORK CAPACITY SCREENING utilizes functional and work sample activities to provide the referral source with *objective data* regarding an individual's safe physical capabilities, functional tolerances and limitations as they relate to required and/or essential work demands, recreation

---

[3] For ease of reference, the Court will refer to only the pages in the first copy of the seven-page functional task assessment and recommendations rather than citing to all three copies of this assessment.

and/or activities of daily living." R. 469 (emphasis added). He further explained that, "in terms of an 8-hour workday, the following guides are utilized when making work capability/tolerance recommendations. (Occasional 1-33%/day Frequent 34-66%/day Continuous 67-100%/day)[.]" *Id*.

Mr. Rushmore administered sixteen task simulations designed to test or to measure Plaintiff's ability to perform the following: sitting, standing, walking, stair/step climbing, bending/stooping, squatting, crouching, kneeling, crawling, overhead reaching, repetitive foot motions, balance – dynamic, balance – static, hand strength, material handling, and dexterity / handling / manipulation. R. 470−75. For example, to test Plaintiff's material handling, Mr. Rushmore detailed the task simulation and Plaintiff's performance as compared to the female population:

**TASK 15. Material Handling**

Task Simulation: The physical capacity assessment system measures static lifting ability utilizing a maximum of six positions. The results of this test can give indication of performance deficiencies, degree of disability or injury and help to formulate appropriate goals for rehabilitation success [footnote omitted].

According to ergonomic work principles, the 25th percentile is considered a safe level of performance (75 percent of the population could adequately and safely function related to occupational standards).

The normative data was provided by the National Institute for Occupational Safety and Health (NIOSH) for Physical Capacity Tests [footnote omitted].

Task Performance: MAXIMAL ISOMETRIC STRENGTH - OCCASIONAL FREQUENCY

Test Result

| | |
|---|---|
| Arm Lift | 24 lbs |
| Torso Lift | Unable to assume test position |
| Leg Lift | Unable to assume test position |
| High Far Lift | 8 lbs |

9

| Floor Lift | Unable to assume test position |
|---|---|
| High Near | 13 lbs. |

MAXIMAL VOLUNTARY ISOMETRIC STRENGTH (pounds) –
Normative Data

|  | Male Population Percentile | | | | | Female Population Percentile | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Lift | 10 | 25 | 50 | 75 | 90 | 10 | 25 | 50 | 75 | 90 |
| 1. Arm | 65 | 77 | 90 | 102 | 114 | 39 | 48 | 58 | 69 | 78 |
| 2. Torso | 64 | 77 | 95 | 118 | 142 | 46 | 55 | 68 | 83 | 100 |
| 3. Leg | 108 | 152 | 201 | 238 | 271 | 33 | 60 | 88 | 117 | 141 |
| 4. High Far | 35 | 42 | 51 | 62 | 75 | 20 | 21 | 29 | 35 | 42 |
| 5. Floor | 130 | 163 | 201 | 238 | 271 | 71 | 97 | 123 | 152 | 176 |
| 6. High Near | 77 | 97 | 121 | 146 | 168 | 35 | 49 | 64 | 79 | 93 |

Limiting Factors/Performance Limitations: Struggled to perform the lifting activities requested due to poor balance, decreased standing tolerance, and pain. Did not achieve the 25th percentile in any lift performed.

**WORK PERFORMANCE RECCOMENDATIONS** [sic]: Not at all

R. 474.

In order to test Plaintiff's dexterity, handling, and manipulation capabilities, Mr.

Rushmore administered the Purdue Pegboard test:

**TASK 16. DEXTERITY/HANDLING/MANIPULATION:**

TASK SIMULATION: Purdue Pegboard Test

This is a test to see how quickly and accurately you can work with your hands. Right/left hand each hand is tested separately in 30-second durations placing pegs in holes. Both hands are tested working together 30 seconds placing pegs [i]n holes. Both hands are timed for 60 seconds assembling pegs washers and collars.

TASK PERFORMANCE: Right: 9 pegs   Left: 8 pegs
[B]oth: 7/7 pairs = 14
Assembly: 16 parts

| Male & Female General Factory Work: | Poor | Average | Excellent |
|---|---|---|---|
| Right | 12-13 | 16-18 | 21-22 |
| Left | 11-12 | 15-17 | 20-21 |
| R+L+B= | 10 | 13-15 | 16-18 |
| Assembly | 22-30 | 37-42 | 49-56 |

10

LIMITING FACTORS/PERFORMANCE LIMITATIONS: Demonstrated a stiff forward-bent sitting posture. Some difficulty grasping parts and with sequencing for bilateral and multi-step instructions.

**WORK PERFORMANCE RECCOMENDATIONS [sic]: Tested in the poor level in all areas.**

R. 474−75; *see also* R. 470 (recommending occasional sitting because Plaintiff was able to complete 25 minutes of 30 minutes scheduled sitting; recommending occasional standing (with upper extremity assist) because Plaintiff was able to complete 5 minutes out of 30 minutes scheduled standing while completing other tasks; recommending occasional (short distance) walking because Plaintiff was able to complete 4:40 minutes of 10 minutes scheduled continuous walking on level surface – treadmill 1.5 mph; recommending occasional stair/step climbing because Plaintiff was able to complete 15 step up and down a 6-inch step of 50 requested stairs).

Mr. Rushmore went on to explain the meaning of the results and Plaintiff's efforts during the assessment, as follows:

> The results of this Assessment can be considered representative of Darrlyena['s] [] minimal physical work capabilities and tolerances based on the results to this Assessment. Darrlyena demonstrated consistent effort throughout the assessment. Her responses to dynamic and repetitive activities and her reported responses were proportional [to] her effort.

R. 475.

Mr. Rushmore also provided the following functional task summary and recommendations:

> **FUNCTIONAL ACTIVTIES - STATIC**
> **SITTING:** Limited by pain to 25 minute duration
> **STANDING:** Limited by pain to 4 minute durations with upper extremity assist
>
> **FUNCTIONAL ACTIVITIES - DYNAMIC**
> **WALKING:** Limited by pain and poor balance to short distances
> **REPETITIVE BENDING/STOPPING:** Not at all limited by pain and balance
> **SQUATTING:** Not at all limited by pain and balance

11

**CROUCHING:** Not at all
**KNEELING:** Not at all
**CRAWLING:** Not at all
**OVERHEAD REACHING:**
**REPETITIVE FOOT: RIGHT**: Occasional          **LEFT**: Not at all
**BALANCE:** Not at all limited by pain and balance – dynamic, Static – Not at all
limited by pain and balance

**SIMPLE/FIRM/SUSTAINED GRASP:** Right – yes    Left – yes

**MATERIAL HANDLING ACTIVITIES (OCCASIONAL)**
**GRIP STRENGTH: RIGHT** 40.0 lbs          **LEFT** 31.4 lbs
**ARM LIFT:** 24 lbs
**TORSO LIFT:** Unable to assume test position
**LEG LIFT:** Unable to assume test position
**HIGH FAR LIFT:** 8 lbs
**FLOOR LIFT:** Unable to assume test position
**HIGH NEAR LIFT:** 13 lbs

**DEXTERITY/HANDLING/MANIPULATION**
**RIGHT** – poor          **LEFT** – poor          **BILATERAL** – poor
**ASSEMBLY** – poor

**COMMENT:** Darrlyena's performance demonstrated inter-activity consistency.
She demonstrated significant limitations in sitting, manual dexterity, standing,
walking, stair climbing, kneeling, squatting, and reaching. *Her performance is not
consistent with employment at a sedentary level.*

R. 1336 (emphasis added).

    **B.**    **Juan Carlos Cornejo, D.O.**

On August 3, 2018, Juan Carlos Cornejo, D.O., conducted a consultative examination of

Plaintiff at the request of the state agency. R. 676−83. Dr. Cornejo observed that Plaintiff was in

no acute distress, "was able to get on and off the examining table. She was able to dress herself.

She was comfortable in the seated position during the interview." R. 678. Dr. Cornego's findings

on examination were as follows:

<u>**UPPER EXTREMITY EXAMINATION**</u>
Examination of the upper extremities showed no evidence of joint deformity or
instability. The upper extremities reveal no warmth. There was no swelling. Range
of motion of the left shoulder was 150 degrees in flexion and abduction. There was

no significant tenderness to direct palpation of the right and left upper extremities. Biceps, triceps, and brachioradialis deep tendon reflexes were 2+ bilaterally symmetric. There was no sensory deficit to light touch and pinprick of the upper extremities bilaterally. Pinch strength and grip strength were 5/5 bilaterally. Muscle strength of the left rotator cuff muscles was 4/5. The claimant was able to extend the fingers, make a fist, and oppose the thumbs bilaterally. There is a positive Neer's and Hawkins test of the left.

## LOWER EXTREMITY EXAMINATION

Examination of the lower extremities showed no evidence of joint deformity or instability. The lower extremities reveal no warmth. There was no swelling. Hips, knees, and ankles showed normal range of motion. There is tenderness of the medial and lateral joint lines of the left knee. Patella and Achilles deep tendon reflexes were 2+ bilaterally symmetric. There was no sensory deficit to light touch and pinprick of the lower extremities bilaterally. Muscle strength was graded at 5/5 bilaterally in the muscle groups of the lower extremities, including the hip flexors, knee flexors, knee extensors, foot dorsiflexors, foot plantar flexors, and extensor hallucis longus.

## CERVICAL SPINE EXAMINATION

An examination of the cervical spine showed a normal lordotic curve. There were no scars along the cervical spine. Range of motion of the cervical spine was decreased in flexion at 30 degrees when evaluated; however, when distracted she was able to rotate her neck to 80 degrees. There was no spasm or tenderness to direct palpation of the trapezius, cervical paraspinal muscles, or along the spinous process of the cervical spine. Spurling's Test was negative bilaterally.

## THORACIC SPINE EXAMINATION

An examination of the thoracic spine showed a normal kyphotic curve. There were no scars along the thoracic spine. There was normal range of motion bilaterally in flexion, extension, rotation, and side bending. There was no spasm and tenderness to direct palpation of the medial scapula, parathoracic, middle trapezius muscle areas, or along the spinous process of the thoracic spine. No winging of the scapula was observed.

## LUMBOSACRAL SPINE EXAMINATION

An examination of the lumbar spine showed a normal lordotic curve. There were no scars along the lumbosacral spine. Range of motion of the lumbar spine was decreased in flexion at 30 degrees and extension at 20 degrees. There is tenderness of the para-lumbar musculature. There was no lower back pain or radicular symptoms on sitting straight leg raising maneuver test. There was no lower back pain or radicular symptoms on supine straight leg raising maneuver test.

## GAIT

The examinee was able to walk with a normal physiologic gait. She did not require the use of an ambulation aide. The examinee was able to heel walk, toe walk, and

squat without difficulty. Hand-eye coordination was good.

R. 678–79. Dr. Cornejo diagnosed chronic left shoulder pain, status post left labral repair,

history of chronic right foot pain, bilateral knee osteoarthritis, chronic neck pain, cervical

degenerative disc disease, chronic back pain, and lumbar degenerative disc disease. R. 679. Dr.

Cornejo summarized his findings and concluded as follows:

> **SUMMARY**
> In regard to her foot pain, she has had right foot pain since a slip and fall at work
> in 2015. On exam, there is no tenderness of the right foot. There is no evidence of
> swelling or effusion. She does have good mobility of the bilateral feet and ankles.
> She was able to ambulate without the use of a cane or crutch.
>
> In regard to her spine, she has had neck and back pain since 2015. On exam, she
> does have better mobility of the cervical spine when distracted versus when
> evaluated. She does have decreased mobility of the lumbar spine; however, she was
> able to sit in 90 degrees inflexion during the evaluation.
>
> In regard to her left shoulder pain, she has had left shoulder pain since a work injury.
> On exam, she has less mobility of the left shoulder versus the right. She has
> decreased strength of the left rotator cuff muscles versus the right; however, she
> does have good functionality of her bilateral hands. She was able to take off her
> shoe by herself. She was able to write on the intake form.
>
> **CONCLUSION**
> She would have difficulty with frequently bending and turning her neck and back.
> She would be able to walk and stand for a reasonable amount of time with needed
> breaks. She would be able to sit for a reasonable amount time with needed breaks.
> No significant balance limitations were observed during the evaluation. *She would
> have difficulty with overhead lifting the left shoulder; however, she would be able
> to do sedentary activity with needed breaks. She has good functionality of her right
> and left hands. She would be able to handle fine and small sized objects. She has
> no significant limitations to fingering such as picking and pinching objects.* She
> would be limited from physically exerting activity and heavy lifting.

R. 679–80 (emphasis added).

Dr. Cornejo also completed a two-page, check-the-box, and fill-in-the-blank form

entitled, "Passive Range of Motion Chart" on August 3, 2018. R. 681–82. Dr. Cornejo noted,

*inter alia*, that Plaintiff could fully extend and make a fist with both hands. R. 681. Plaintiff

could oppose fingers with both hands. *Id*. Each of Plaintiff's hands had a 5/5 grip strength and 5/5 pinch strength. *Id*. Dr. Cornejo left blank the spaces reflecting dorsiflexion, palmar flexion, radial deviation, and ulnar deviation of Plaintiff's right and left wrists. *Id*. Dr. Cornejo also left blank two questions asking whether Plaintiff could separate papers or button buttons. *Id*.

## V.   DISCUSSION

Plaintiff raises a number of challenges to the ALJ's decision, including, *inter alia*, that the ALJ utterly failed to consider the opinion of the physical therapist, resulting in a flawed RFC determination. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 22. For the reasons that follow, this Court concludes that the ALJ's RFC determination is not supported by substantial evidence, but for reasons different than those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *See Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, and the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v.*

*Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability

---

[4] As previously noted, Plaintiff's claim was filed on November 14, 2017.

16

factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how [she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how [she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In this case, at step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform light work "except all posturals are occasional. No ladders, ropes, scaffolds and no crawling. Occasional reaching with the left nondominant arm, no overhead reaching with the left nondominant arm." R. 23. In reaching this determination, the ALJ considered Mr. Rushmore's assessment and findings as follows:

> The undersigned has considered the physical/occupational therapy records from Rushmore Physical Therapy, and the functional test summary and

17

recommendations completed by James H Rushmore, P.T. in October 2017 (Exhibits 4F/65-71, 28F). In reviewing some of the testing results, it seems to be more restrictive than the objective testing referenced in the evidence of record. For example, the physical examination performed by the consultative examiner [Dr. Cornejo] in August 2018, indicates the claimant has good functionality in her right and left hands. She would be able to handle fine and small sized objects. She has no significant limitations to fingering such as picking and pinching objects (Exhibit 11F/5).[5] Whereas Mr. Rushmore's report references the claimant as "work

---

[5] The ALJ was "partially persuaded" by Dr. Cornejo's opinion, reasoning as follows:

On August 3, 2018, Juan Carlos Cornejo, D.O., conducted a consultative exam at the request of the Disability Determination Services. (Exhibit 11F). The doctor's conclusion references the following: She would have difficulty with frequently bending and turning her neck and back. She would be able to walk and stand for a reasonable amount of time with needed breaks. She would be able to sit for a reasonable amount time with needed breaks. No significant balance limitations were observed during the evaluation. She would have difficulty with overhead lifting the left shoulder; however, she would be able to do sedentary activity with needed breaks. She has good functionality of her right and left hands. She would be able to handle fine and small sized objects. She has no significant limitations to fingering such as picking and picking objects. She would be limited from physically exerting activity and heavy lifting." (Exhibit 11F/5). The doctor does not address his opinion in vocational terms, as he does not describe with specificity the amount the claimant can walk, stand or carry, etc. He references the claimant is able to do sedentary activity with needed breaks but he does not provide a rationale for limiting the claimant to sedentary work based upon his objective findings in his exam. Furthermore, his finding and limiting the claimant to sedentary work does not appear to be consistent with his observations, as he reported the claimant was able to get on and off the exam table, and dress herself; she was comfortable in a seated position during the interview. In addition, the objective findings overall are not supportive of the sedentary exertional level. For example, his physical examination of the claimant, in part he references the claimant's muscle strength was graded at 5/5 bilaterally in the muscle groups of the lower extremities, including the hip flexors, knee flexors, knee extensors, foot dorsiflexors, foot planter flexors and extensor halluces longus (Exhibit 11F/3). With respect to the claimant's thoracic spine, he indicated there was normal range of motion bilaterally (Exhibit 11F/4). Although the claimant's range of motion in the lumbar spine was decreased inflection of 30 degrees and extension at 20 degrees, there was no low back pain or radiation symptoms on sitting straight leg raising maneuver and there was no lower back pain or radicular symptoms on the supine straight leg raising maneuver test. Thus, the undersigned does not accept his opinion limiting the claimant to the sedentary exertional level as it is not supported by his observations or by the objective testing as well as he provides no rationale or basis for his opinion in this regard. The undersigned accepts his opinion that the claimant would have difficulty with overhead lifting of the left shoulder, but he does not reference a

18

performance recommendations" with respect to her right and left fine grasping as well as her right and left simple grasping. (Exhibit 28F/6).

R. 30. The Acting Commissioner contends that this consideration is "plainly contrary to Plaintiff's contention" that the ALJ completely failed to consider Mr. Rushmore's findings and opinion. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, p. 20 n.3. The Acting Commissioner further argues that "[t]he ALJ explained that she found the testing results to be more restrictive than the objective testing referenced in the evidence of record (Tr 30). There was no error." *Id.*

While this Court agrees with the Acting Commissioner that Plaintiff erred in contending that the ALJ utterly failed to analyze Mr. Rushmore's opinion, the Court cannot agree that the ALJ did not err when considering that opinion. Under the regulations governing claims filed before March 27, 2017, the opinion of Mr. Rushmore, a physical therapist, would not have constituted a "medical opinion" because physical therapists were not "acceptable medical sources." 20 C.F.R. §§ 404.1527(a)(1) (limiting "medical opinions" to "statements *from acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions") (emphasis added), 404.1513(a) (listing acceptable medical sources, which excludes physical therapists) (eff. Sept. 3, 2013 to Mar. 26, 2017). However, under the current regulations, a "medical opinion" is "a statement from a

---

limitation in vocational terms. The undersigned accepts his opinion that she has good functionality of her right and left hands, she is able to handle fine and small sized objects and she is no significant limitations in fingering such as picking and pinching objects. Therefore, the undersigned is partially persuaded by his assessment.

R. 29.

medical source about what [a claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain work-related activities and abilities. 20 C.F.R. § 404.1513(a)(2)(i)−(iv) (2017). A "medical source" is, *inter alios*, "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law[.]" 20 C.F.R. § 404.1502(d) (2017). Mr. Rushmore appears to have met these requirements, a fact that the Acting Commissioner does not challenge. *See* R. 475 (reflecting Mr. Rushmore's physical therapy license number, 40QA00262900), 470−75 (reflecting Mr. Rushmore's opinions regarding Plaintiff's functional limitations and abilities), 1336 (same); *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, p. 20 n.3. Accordingly, because Mr. Rushmore's opinion constitutes a "medical opinion," the applicable regulations required the ALJ to articulate her consideration of this medical opinion, including an explanation of how she considered the supportability and consistency of the opinion. 20 C.F.R. § 404.1520c(b), (c); *Michelle K.*, 2021 WL 1044262, at *4.

In this case, the ALJ addressed neither the consistency nor the supportability of Mr. Rushmore's opinion. R. 30. Instead, the ALJ vaguely observed that Mr. Rushmore's opinion "seems to be more restrictive than the objective testing" performed by Dr. Cornejo, comparing the functional findings of Plaintiff's hands and fingers by this consultative examiner and Mr. Rushmore. *Id*. Even if the Court were to construe this discussion as consideration of the consistency of Mr. Rushmore's opinion, this discussion would nevertheless be deficient because the ALJ does not explain−nor is it apparent to the Court−why she discounted Mr. Rushmore's opinion in this regard. R. 30, 469−75. As previously detailed, Mr. Rushmore administered, *inter alia*, the Purdue Pegboard test when assessing Plaintiff's dexterity, handling, and ability to manipulate items, R. 474−75, while Dr. Cornejo left blank questions asking whether Plaintiff

was able to separate papers or button buttons, R. 681. *See also* R. 469 (reflecting Mr.

Rushmore's explanation that the assessment provides "objective data regarding an individual's

safe physical capabilities, functional tolerances and limitations as they relate to required and/or

essential work demands, recreation and/or activities of daily living"); *Kala S. v. Berryhill*, No.

1:18-CV-00934-YY, 2019 WL 4015884, at *7 (D. Or. Aug. 26, 2019) (referring to the Purdue

Pegboard test as "objective"); *Romero v. Berryhill*, No. 17-CV-02527-CMA, 2018 WL 3471072,

at *4 (D. Colo. July 19, 2018) (same). Moreover, to the extent that the ALJ's finding that Mr.

Rushmore's opinion "seems to be more restrictive[,]" than Dr. Cornejo's opinion, the ALJ

limited her discussion to Plaintiff's functionality of her hands and fingers without explaining

why the remainder of Mr. Rushmore's opinion regarding, *inter alia*, Plaintiff's functional

limitations in sitting, standing, walking, stair climbing, squatting, crouching, kneeling, crawling,

balancing, etc., R. 470−75, 1336, was not persuasive because it was inconsistent with other

record evidence. R. 30. In any event, the ALJ's limited discussion in this regard is not sufficient

to satisfy the supportability factor of the new regulations: The ALJ's decision is silent as to

whether, or in what way, Mr. Rushmore's opinion was not supported by his own findings or

other record evidence. *Id.*; *see also* 20 C.F.R. § 404.1520c(c)(1); *Nicole L. v. Kijakazi*, No. 6:20-

CV-01576, 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022) ("But without some clear

discussion of the supportability factor the Court is left to guess at the ALJ's reasoning, which

frustrates meaningful review."); *cf. Matthew J. S. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1606

(GLS), 2022 WL 957974, at *3 (N.D.N.Y. Mar. 30, 2022) (remanding action where "not only

did the ALJ fail to articulate the supportability and consistency factors of [a physical therapist's

opinion, he appears to have excluded it from consideration").

"The new regulations promulgated by the Social Security Administration set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 FR 5844-01, and citing 20 C.F.R. §§ 404.1520c(b) and 416.920c(b)). As set forth above, "the ALJ's failure in this case to meet these minimum levels of articulation frustrates this court's ability to determine whether [this] disability determination was supported by substantial evidence." *Id.*; *see also Brownsberger v. Kijakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *6–7 (M.D. Pa. Jan. 18, 2022) (finding that substantial evidence did not support the ALJ's assessment of medical opinions where the ALJ "makes no effort to compare or support their opinions with the record. . . . The ALJ does not provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors"); *Jaleesa H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01180 EAW, 2022 WL 174337, at *5–6 (W.D.N.Y. Jan. 18, 2022) (stating that, under the new regulations, the ALJ "is still required to articulate how he considered the medical opinion, including explaining how he considered the 'supportability' and 'consistency' factors" and that the ALJ in that case "did not explain anything—instead, he made a conclusory statement that Dr. Fabiano's opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations"); *Nicole L.*, 2022 WL 160274, at *8.

Furthermore, the Court cannot conclude that the ALJ's failure articulate why Mr. Rushmore's opinion was not persuasive is harmless. Mr. Rushmore opined, *inter alia*, that Plaintiff was limited to sitting for 25-minute durations and was limited to standing for 4-minute

durations with upper extremity assist, had poor bilateral hand dexterity/handling/manipulation, and that Plaintiff's ability "is not consistent with employment at a sedentary level." R. 474–75,1336. However, the ALJ's RFC determination does not reflect these limitations. R. 23.

Accordingly, this Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination of Mr. Rushmore's opinion and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[6]

---

[6] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Mr. Rushmore's opinion and the RFC determination, the Court does not consider those claims.

## VI.    CONCLUSION

For these reasons, Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 6, 2022                                    *s/Norah McCann King*
                                              NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE